Nos. 12-1508, 12-1509

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

WILDEARTH GUARDIANS, ROCKY MOUNTAIN WILD, and
THE TOWN OF SUPERIOR, a Colorado municipality,

*Plaintiffs-Appellants*,

v.

UNITED STATES FISH AND WILDLIFE SERVICE, *et al.*,

*Defendants-Appellees*,

THE BOARD OF COUNTY COMMISSIONERS OF THE
COUNTY OF JEFFERSON, COLORADO, *et al.*,

*Intervenors-Appellees*.

On Appeal from the United States District Court for the District of Colorado,
Nos. 11-cv-3294 and 12-cv-388 (Hon. Philip A. Brimmer)

**FEDERAL APPELLEES' OPPOSITION TO APPELLANTS'
JOINT MOTION TO FILE SUPPLEMENTAL APPENDIX
OR, IN THE ALTERNATIVE, MOTION TO SURREPLY AND TO
SUPPLEMENT APPELLEES' JOINT SUPPLEMENTAL APPENDIX**

Federal Appellees oppose the filing of the three documents contained in Appellants' proffered Supplemental Appendix on the ground that the documents, and the arguments in the Reply Brief that the documents support, were properly part of Appellants' Opening Brief and Joint Appendix filed with this Court on July 15, 2013. An appellant has an obligation to include all arguments in its Opening Brief, *Water Pik, Inc. v. Med-Systems, Inc.*, 726 F.3d 1136, 1159 n.8

(10th Cir. 2013), and to include all relevant evidence in the Appendix, 10th Cir. R. 30.1(A)(1). By holding these specific arguments and documents back until their Reply Brief and Supplemental Appendix, Appellants deprived Appellees of the opportunity to respond to them in their Response Briefs filed September 13 and 16, 2013.

Contrary to Appellants' assertion that the documents only became relevant as responses to Appellees' arguments, all three documents supported arguments Appellants made, or should have made, in their Opening Brief, and thus should have been included in the Appendix. In these circumstances, this Court may properly decline to consider them and their associated arguments. *Water Pik*, 726 F.3d at 1159 n.8 (declining to address argument raised for the first time in the reply brief); *Burnett v. Southwestern Bell Telephone, L.P.*, 555 F.3d 906, 910 (10th Cir. 2009) ("we regularly decline to hear claims predicated upon record evidence not included in the appendix"). However, because the arguments and documents address issues related to public health, Federal Appellees respectfully submit that the best way to rectify this matter is to allow Appellees the opportunity to provide this brief response and to add 12 pages (pages 281-292) to their Joint Supplemental Appendix.

1. **Document 1**

Document 1 (Applt.Supp.App. 1) is Corrective Action Decision/Record of Decision ("CAD/ROD") Fig. 27 "Estimated Sitewide Surface Soil Exceedance Area for Plutonium-239/240." Although Appellants included the text of the CAD/ROD in their Appendix (App.68-147), they chose not to include any figures. Appellants argued in their Opening Brief (at 25-27) that soils within the Corridor "contain elevated levels of plutonium," citing a number of documents. They reiterate this argument in their Reply Brief (at 12-13), citing CAD/ROD Fig. 27 for the first time.

The key to Fig. 27 explains that the green area is "Area exceeding 9.8 pCi/g based on Kriging results at 90% confidence level." The CAD/ROD referenced Fig. 27 in connection with its discussion of remedial alternatives, specifically Alternative 3, Targeted Surface Soil Removal. CAD/ROD 55-56 (App.122-23). While the CAD/ROD does not include an explanation of the methodology for preparing Fig. 27, the "Final Buffer Zone Sampling and Analysis Plan," a document that is part of the CERCLA administrative record for the Rocky Flats cleanup, but is not in the administrative record in this case, explains that kriging "is the process of simulating predicted values in unsampled areas by calculating a weighted least-squares mean of the surrounding data points." The green area of

3

simulated values on Fig. 27 does appear to extend to Rocky Flats' eastern boundary along a short segment of the boundary. However, as shown on CAD/ROD Fig. 10 (Appellees' Supp.App.182) and at Appellees' Supp.App.012-018, the actual samples taken within the Corridor, including in or near the green area on Fig. 27, all had measured plutonium concentrations below 9.8 pCi/g.

All of this was known to the Cleanup Agencies when they made their decision, documented in the CAD/ROD, not to select Alternative 3, and when they determined that "[c]onditions in the Peripheral OU are acceptable for unrestricted use and unlimited exposure." App.132. The Cleanup Agencies' remedial decisions are not subject to challenge in this action. See Response Brief of Federal Appellees at 34-35. Fig. 27 does not undercut Federal Appellees' demonstration (Response Br. 33-46) that Appellants' assertions about elevated plutonium levels in the Corridor are incorrect.

### 2.   Document 2

Document 2 (Applt.Supp.App.2-4) is a November 8, 2011 email from Tim Allen (FWS) to Michael Dixon (FWS) regarding comments received by FWS on the discussion of air quality impacts in the Draft Environmental Assessment ("EA"). The Draft EA had a short discussion (at 64) of the potential air quality impacts from a highway in the Corridor, which referenced the 2008 Northwest

Corridor Study ("a detailed analysis of . . . construction alternatives determined that none of the alternatives would be likely to violate air quality standards or maintenance plans"). That study, prepared by the Federal Highway Administration and Colorado Department of Transportation, addressed air emissions from the potential highway, including ozone and NO2 (as well as other oxides of nitrogen).[1]

Mr. Allen recommended expanding that discussion for the Final EA. Specifically, Mr. Allen recommended that the Final EA also reference the 2010 addition of Jefferson Parkway to the Denver Regional Council of Governments ("DRCOG") fiscally constrained 2035 Regional Transportation Plan ("RTP") which demonstrated DRCOG's conclusion that the proposed Parkway would not cause a violation of any then-current air quality standard, and DRCOG's 2011 Conformity Determination (including for the proposed parkway) for the then-current 1997 ozone standard. This recommendation was implemented. See App.474. With respect to the more stringent ozone standard EPA promulgated in 2008, the Final EA reported (as Mr. Allen recommended) DRCOG's expectation that the new standard would not require much change from the current plan. *Id.*

---

[1] Appellants included an excerpt of the air emissions analysis from the Northwest Corridor Study in their Appendix (App.38-41). That analysis also provided information about national and regional emissions trends, monitoring data, and modeling results to evaluate compliance with then-current air quality standards, which was incorporated by reference into the EA.

And with respect to both the 2008 ozone standard and the 1-hour $NO_2$ standard EPA promulgated in 2010 to supplement the annual $NO_2$ standard, the Final EA explained (also as Mr. Allen recommended) that DRCOG had to ensure that a highway in the Corridor "must conform to air quality standards and continue to comply with future standards" as they are implemented. *Id.*

Federal Appellees responded (Response Br. at 46-51) to the argument Appellants made in their Opening Brief (at 31-39). In brief, Federal Appellees explained that it was adequate for the EA to document the proposed Parkway's compliance with then-current air quality standards by reference to the analyses of FHWA, CDOT and DRCOG, and to rely on DRCOG's legal obligation to ensure compliance with the 2008 ozone standard and the 2010 1-hour $NO_2$ standard as they were implemented.

In their Reply Brief (at 16-17 n.7), Appellants make the additional argument that the discussion of $NO_2$ emissions in the 2008 Northwest Corridor Study, which they incorrectly refer to as the "2003" Northwest Corridor Study, could not be relied on at all because the study was "quite out of date" (quoting Mr. Allen's email). But Mr. Allen's email does not go so far as to suggest that the emissions calculations in the 2008 Northwest Corridor Study were useless and that the

6

reference to the study should be deleted from the Final EA. He was instead proposing that additional references be added, which was done.

### 3. Document 3

Document 3 (Applt.Supp.App. 5-19) is an October 31, 2011 letter from Charles Newby challenging the Draft EA's discussion of plutonium, including Draft EA Appendix G, the EPA/CDPHE September 21, 2011 letter (App.523-530). The EPA/CDPHE letter explained that the conclusion in the CAD/ROD that conditions in the Peripheral Operable Unit were "acceptable for unrestricted use and unlimited exposure" included highway construction. See Response Brief of Federal Appellees at 39-41. The letter was obviously an important basis for FWS's conclusion in its Finding of No Significant Impact ("FONSI") that construction of a highway within the Corridor would not cause a significant public health risk. In their Opening Brief, Appellants cited this letter three times (at 26, 27 and 29) but did not challenge the substance of the letter. In their Reply Brief (at 11-13), Appellants belatedly challenge the EPA/CDPHE letter as "irrational" and "flaw[ed]," citing (at 12) Mr. Newby's October 31, 2011 letter.

Appellants waived their right to challenge the substance of the September 21, 2011 letter by failing to do so in their Opening Brief. Moreover, their challenge lacks merit, as FWS's responses to Mr. Newby's letter show. FWS

7

designated the comments Mr. Newby made in his October 31, 2011 letter as Comments 112.1 through 112.9 and responded to each of them in Appendix I to the Final EA.  FWS responded to Comments 112.1, 112.3, 112.5, and 112.7 under the heading "Plutonium."  See Appellees' Supp.App.258-263.  FWS responded to Comments 112.2, 112.4 and 112.8 under the heading "Health and Safety Risks" (Final EA pages I-28 to I-30), and to Comments 112.6 and 112.9 under the heading "Request EIS" (Final EA pages I-32 to I-33).

  Federal Appellees respectfully move to supplement Appellees' Joint Supplemental Appendix with pages 63-64 of the Draft EA (Supp.App.281-283) (relating to air quality impacts) and with pages I-27 to I-34 of the Final EA (Supp.App.284-292) (FWS's responses to Mr. Newby's October 31, 2011 comments not already included in Appellees' Supp.App.).

  Intervenor Appellees join in this Opposition and Motion.

        Respectfully submitted,

        s/ Mary Gabrielle Sprague
        U.S. Department of Justice
        Environment & Natural Resources Division
        Appellate Section
        P.O. Box 7415
        Washington, DC 20044
        (202) 514-2753
        mary.gay.sprague@usdoj.gov

October 25, 2013
90-1-4-13587

**ECF CERTIFICATION**

I hereby certify with respect to the foregoing motion that:

(1) no information appears that is required to be redacted to protect privacy;

(2) no hard copies are required to be filed; and

(3) the ECF submission was scanned for viruses with the most recent version of a commercial virus scanning program, and according to the program is free of viruses.

<u>s/ Mary Gabrielle Sprague</u>

**CERTIFICATE OF SERVICE**

I hereby certify that on October 25, 2013, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit using the appellate ECF system and that all participants in this case were served through that system.

<u>s/ Mary Gabrielle Sprague</u>